IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>1.41 ACRES OF LAND, more or less, situated in the City of Alameda, Alameda County, State of California, and THE STATE OF CALIFORNIA, acting by and through its Department of Parks and Recreation, and the EAST BAY REGIONAL PARK DISTRICT,<br><br>        Defendants.<br>                                                                     / | No. C 14-01781 WHA<br><br>**ORDER RE MOTION TO STRIKE AFFIRMATIVE DEFENSES** |

## STATEMENT

In this condemnation action, the United States, acting on behalf of the General Services Administration, seeks to condemn a portion of McKay Avenue in Alameda County. The map below shows McKay Avenue, which extends from Central Avenue to Crown Memorial State Beach. East of McKay Avenue is the Alameda Federal Center and a vacant parcel of federal land. West of McKay Avenue are condominiums and Crown Beach.



**MAP OF CONDEMNED AND SURROUNDING AREA**

As a practical matter, this dispute is one of preserving public open-space values versus maximizing the proceeds of the sale of the vacant federal parcel through private development. The United States had sought to sell the vacant federal parcel for private development, and defendants seek to preserve the open-space near Crown Beach. At issue are certain access rights that the United States seeks to possess.

In 1961, the United States granted McKay Avenue to the State of California, reserving access and utility easements across McKay Avenue for "as long as may be required to serve Government-owned property."

In 2011, the United States began publicly auctioning the vacant parcel. A private developer submitted the winning bid with a sale price of $3.075 million. Defendant East Bay

Regional Park District ("East Bay") offered $1.5 million.  The City of Alameda then re-zoned the property for open-use only.

In April 2014, the United States commenced this condemnation action, filed a declaration of taking, and deposited ten dollars with the Clerk of the Court (Dkt. Nos. 1, 5, 11, 13). Defendants California Department of Parks and Recreation ("State Parks") and East Bay filed answers.

The United States then filed the instant motion to strike affirmative defenses.  Fact discovery will close in May 2015 and trial will begin October 2015.  This order follows full briefing and oral argument.

## ANALYSIS

The United States seeks to strike defendants' affirmative defenses, leaving only the issue of just compensation.  This is a pleading motion without the benefit of discovery.  The United States seeks an order holding as a matter of law that the taking is for a congressionally-authorized public purpose, namely, whether the taking is authorized by statute and whether it qualifies as a "public use" under the Fifth Amendment.  *United States v. 14.02 Acres of Land*, 547 F.3d 943, 949–50 (9th Cir. 2008).  For the reasons stated herein, the United States' motion to strike defendants' affirmative defenses is **DENIED**.

### 1. STATUTORY AUTHORITY.

It is undisputed that the United States' complaint and declaration of taking failed to cite a disposal-of-property statute such as 40 U.S.C. 543, 545.  The declaration and complaint only cite 40 U.S.C. 581(c), which prescribes the GSA's general authority (including condemnation), 40 U.S.C. 3114, which sets the requirements for a declaration of taking, and an appropriations act.  On the record presented, it would appear that at least some of the condemned land is to be taken solely for the benefit of the vacant lot, given that the United States already has an easement to service the vacant lot for so long as it is owned by the United States.  Therefore, the affirmative defense will not be stricken, though it will need to be proven up at summary judgment and/or trial.

3

The United States responds that it did not need to cite a disposal statute because it sought to condemn the land for the "continuing operations" of the Alameda Federal Center. This argument is belied by the easement it already retains and the circumstances around the now defunct sale to the private developer. The only real reason the United States seeks to obtain title to McKay Avenue in fee simple is to secure easements for a prospective private development of the vacant federal parcel. This falls into the category of disposal of surplus lands and the government should have cited such authority in its declaration and complaint.

The United States' reliance on *United States v. 1.33 Acres*, 9 F.3d 70, 71 (9th Cir. 1993) is misplaced. There, unlike here, the United States relied upon a disposal statute and the GSA's general condemnation power. The disposal statute cited was found to be broad enough to authorize the condemnation. Here, no disposal statute was cited in the declaration of taking.

### 2. PUBLIC USE.

On the other hand, this order sides with the United States on the next issue of "public use." Defendants contend that there is no "public use" for the proposed taking and that the proffered "public purposes" are pre-textual. *Kelo v. City of New London, Connecticut*, 545 U.S. 469, 477–78 (2005). Specifically, defendants allege that the United States condemned the land in order to secure rights to the McKay Avenue utility and access easements so as to effect a more profitable sale of the vacant parcel.

In *1.33 Acres,* our court of appeals upheld a condemnation action undertaken to secure an easement necessary to dispose of federal property. 9 F.3d at 72–74. As discussed *supra*, that decision relied primarily on a disposal statute. Furthermore, in *Southern Pacific Land Co. v. United States*, 367 F.2d 161, 163 (9th Cir. 1966), the United States condemned mineral rights underlying a parcel taken for the construction of a military facility in order to increase the value of the condemned land in the event of its future sale. The court stated that "[a]dvantageous liquidation of a Government's investment is a legitimate consideration in determining the estate to be taken." *Ibid*. Taken together, these decisions support the proposition that the United States may condemn property pursuant to a disposal statute in order to secure access by the buyer to the

4

1 disposed property and in doing so may also consider the condemnation's effect on the value
2 of the disposal property.

3 The problem is that the United States neglected to cite the disposal statute and thus
4 this dictum so far does it no good.  As the record actually stands, the United States relies solely
5 on condemnation to support "continuing operations of the federal building."  In light of the
6 easement already owned by the United States for exactly that purpose, the supposed rationale for
7 condemnation would appear to be a sham – or so it is alleged – and at this stage, that defensive
8 allegation will not be stricken.

### 3. COASTAL ZONE MANAGEMENT ACT.

State Parks' ninth affirmative defense invoked the Coastal Zone Management Act, 16 U.S.C. 1452.  The United States moved to strike this defense and State Parks stated that it "does not contest the motion to strike its defense based on the Coastal Zone Management Act" (Opp. 13).  Accordingly, the motion to strike State Parks' ninth affirmative defense is **GRANTED**.

### CONCLUSION

For the reasons stated herein, State Parks' ninth affirmative defense is hereby **STRICKEN**. The United States' motion to strike defendants' other affirmative defenses is hereby **DENIED**. The requests for judicial notice, to the extent not relied upon herein, are **DENIED AS MOOT**.

Whether or not an amendment to the declaration can be made is a procedural issue not decided by this order.

As stated at oral argument, these issues should be set forth in a motion for summary judgment.  Accordingly, the United States shall file a motion for summary judgment by **FEBRUARY 16, 2015**, to be noticed on a 35-day track.  This, of course, does not preclude defendants from moving for summary judgment at some earlier point.

**IT IS SO ORDERED.**

Dated:  November 10, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5