IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.41 ACRES OF LAND, more or less, situated in the City of Alameda, Alameda County, State of California, and THE STATE OF CALIFORNIA, acting by and through its Department of Parks and Recreation, and the EAST BAY REGIONAL PARK DISTRICT,

    Defendants.

/

No. C 14-01781 WHA

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT OF THE UNITED STATES**

## INTRODUCTION

In this condemnation action, the United States, acting on behalf of the General Services Administration, has condemned a portion of McKay Avenue in Alameda County. The United States now moves for summary judgment that only nominal compensation is due for the taking in this case. For the reasons stated below, the motion of the United States is **DENIED**.

## STATEMENT

This motion concerns just compensation for the condemnation of McKay Avenue, which is in the City of Alameda. Prior to 1961, McKay Avenue served as an access point to the United States Maritime Service Officer's Training School, and the United States held all rights to the property. In 1961, the United States conveyed over ninety acres of land, including McKay Avenue, to defendant California and retained 7.6 acres on the west side of McKay Avenue for a

1 federal government office facility.  The United States also reserved an easement in McKay
2 Avenue for utility-access and street-use purposes.  California developed the land conveyed in
3 that transaction on the east side of McKay Avenue into a state-owned beach and park, which
4 defendant East Bay Regional Park District now operates pursuant to an agreement with the state.
5 Pursuant to that same agreement, East Bay operated and still operates McKay Avenue as the
6 primary access to Crown Beach.  Although there is some parking available on the Crown Beach
7 property, there are also 70 parking spaces along McKay Avenue which the public has been
8 permitted to use when visiting Crown Beach (Carney Rep. at 41).

9       In April 2014, the United States commenced this action in order to condemn McKay
10 Avenue.  In its amended declaration of taking, the United States described the property to be
11 condemned and reserved, *inter alia*, "[a] non-exclusive easement for pedestrian and vehicular
12 ingress and egress" for the benefit of California and preserved "any existing rights of ingress
13 and egress benefitting adjoining property."  All easements in McKay Avenue are subject to
14 conditions that use "must not unreasonably interfere with use of the property by the United
15 States," and "[t]he United States may designate routes of travel, restrict the areas of the property
16 that are available for each purpose and change the configuration and improvements from time to
17 time" (Amd. Decl. Taking, Sched. C).

18       A June 2015 order granted the United States' motion for partial summary judgment,
19 finding the taking of McKay Avenue was authorized and for a public use.  The United States
20 now moves for summary judgment on the issue of just compensation.  This order follows full
21 briefing and oral argument.

22 **ANALYSIS**

23       Generally, "just compensation" for property taken pursuant to the eminent domain
24 authority of the United States is based on the market value of the property on the date of the
25 taking.  *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 3–4 (1984).  The parties agree,
26 however, that the proper measure of just compensation for McKay Avenue itself is based on the
27 actual costs of constructing a substitute facility, which is the proper measure for the taking of
28 property, such as roads, for which there is no market.  That is, a public entity is entitled to

2

compensation for the "taking of a street, road or public highway *only to the extent that, as a result of such taking, it is compelled to construct a substitute highway*." *Washington v. United States ("Hanford")*, 214 F.2d 33, 39 (9th Cir. 1954) (emphasis in original). Where it is unnecessary to replace a road or provide a substitute, however, the condemnee is entitled only to nominal compensation. *Ibid.* The landowner bears the burden of proof in the determination of just compensation. *United States v. 4.0 Acres*, 175 F.3d 1133, 1140 (9th Cir. 1999). The question of whether a substitute facility is reasonably necessary is a question for the court. *United States v. Reynolds*, 397 U.S. 14, 19 (1970); FRCP 71.1(h).

### 1. SUBSTITUTE FACILITY.

The United States argues that no substitute facility is necessary as a result of the taking of McKay Avenue because the taking herein reserved sufficient rights to defendants and surrounding landowners to obviate any need for a substitute facility. Defendants reply that the United States has taken the rights to parking along McKay Avenue, which necessitates the construction of substitute parking facilities for the benefit of the adjacent public park, Crown Beach (Carney Rep. at 83–84).

While under defendants' control, McKay Avenue has functioned as a public street. Neither defendants nor the City of Alameda have imposed long-term parking restrictions apart from some reserved spaces for resident parking. The United States contends that defendants, and by extension, the public, retain any parking rights that existed prior to the taking. To evaluate that contention, it is useful to summarize the history of the easements in McKay Avenue.

Prior to 1961, the United States owned McKay Avenue in fee, subject to several easements for the benefit of nearby private landowners. In 1961, the United States transferred ownership of McKay Avenue (along with the property that became Crown Beach) to California. With that transaction, California took McKay Avenue in fee, subject to the easements of record as well as an easement in favor of the United States for "non-exclusive street use." With the instant taking, the United States took McKay Avenue in fee, subject to "any existing rights of ingress and egress benefitting adjoining property." It also reserved "a non-exclusive easement for pedestrian and vehicular ingress and egress" in favor of defendants.

3

1  The United States argues that "the State and the United States have traded shoes" and
2 maintains that "if prior easements gave parking rights . . . such rights continue to exist after the
3 taking" (United States' Mot. at 16). That argument misses the point. Prior to this condemnation,
4 defendants never held an easement in McKay Avenue, and the easements they now hold are for
5 "ingress and egress," not for "street use," as the easements of record — and the easement that the
6 United States previously held — provided. Defendants' previous parking rights derived from
7 *ownership* of McKay Avenue, and the public's rights derived from defendants' rights. Those
8 rights inured to the holder of the fee interest of the property, which is now the United States.

9  The United States argues that the reservation of "ingress and egress" rights implicitly
10 included the right to park in the same manner as before this taking, but it offers no authority
11 suggesting such an implication, and a plain reading of that language does not permit such an
12 interpretation.

13  Finally, the United States argues that the possibility that it may prevent defendants from
14 using McKay Avenue for parking purposes in the future is too speculative to find that
15 compensation for the construction of a substitute facility is "reasonably necessary." That is, to
16 compensate defendants for the construction of a substitute parking facility while there is no
17 evidence that parking on McKay Avenue will be affected would give defendants a windfall.

18  Defendants admit that parking currently remains available on McKay Avenue (Defs.'
19 Opp. at 16). The only evidence defendants offer in support of their claim that the United States
20 would restrict parking or other access rights on McKay Avenue in the future is an unanswered
21 letter, sent by East Bay prior to the commencement of this action, expressing concerns about
22 parking to the United States (Amspoker Decl. Exh. D). That evidence does not establish the
23 United States' intentions with regards to parking on McKay Avenue. Defendants also contend,
24 however, that just compensation must be based on the rights actually taken, and they are entitled
25 to assume the "most injurious use" of the condemned property when evaluating the need for a
26 substitute facility.

27  Defendants cite to *United States v. 201.19 Acres*, 478 F.2d 1042, 1046 (9th Cir. 1973),
28 for the contention that a condemnee is entitled to measure just compensation based on the "most

4

1  injurious use" of the condemned property. The United States argues that decision is inapposite
2  because it did not involve compensation for the cost of a substitute facility, but offers no
3  principled reason that analysis should not apply to a determination of the necessity of a substitute
4  facility. Indeed, as the United States notes in support of its argument on severance damages,
5  discussed below, compensation for the cost of a substitute facility is intended to serve as "an
6  alternative method of compensation that entirely replaces the market value concept." *United
7  States v. Streets, Alleys and Public Ways in the Village of Stoutsville*, 531 F.2d 882, 884 n.7 (8th
8  Cir. 1976). Accordingly, this order finds it is appropriate to consider the need for a substitute
9  facility based on the property rights actually condemned, rather than based on an unreliable
10 assumption that the current permissive use will persist in perpetuity. It is true that this could
11 result in a windfall to defendants should the United States or any subsequent owner decline to
12 restrict parking along McKay Avenue, but the converse would result in a windfall for the United
13 States, which easily could have avoided this result by reserving a parking easement for the
14 benefit of defendants.

15 The United States argues that the condemnation of McKay Avenue ultimately relieved
16 defendants of the costs of maintaining and improving that street. Even if true, that does not
17 obviate the need for a substitute facility. Rather, the value of any eliminated costs must be
18 considered as an offset to the cost of the substitute facility. That pertains to the amount of just
19 compensation, which is a question for the jury.

20 Accordingly, the motion for summary judgment of the United States that nominal
21 damages are sufficient to compensate defendants is **DENIED.** Defendants have submitted
22 evidence of the actual cost of constructing additional parking spaces (Carney Rep. at 83–84).
23 The amount of just compensation as measured by the cost of a substitute facility must be
24 determined by a jury trial.

25 **2. SEVERANCE DAMAGES.**

26 Defendants contend that, in addition to compensation for McKay Avenue itself, they are
27 entitled to "severance damages" for the diminution in value of Crown Beach as a result of the
28 taking. "When the government takes only part of a person's property, and when the value of the

5

remainder depreciates because of the proposed use on the condemned parcel, the owner is entitled to compensation both for that which is physically appropriated and for the diminution in value to the non-condemned property." *United States v. 33.5 Acres*, 789 F.2d 1396, 1398 (9th Cir. 1986).  The United States contends that compensation for the cost of a substitute facility is meant to serve as the exclusive measure of just compensation to the exclusion of any measure based on market value, so compensation for severance damages would constitute an impermissible windfall to defendants.

Defendants point to *United States v. Miller*, 317 U.S. 369, 373–74 (1943), in which the Supreme Court considered that a condemnee's just compensation "should be measured in various ways depending on the circumstances of each case and that no general formula should be used for the purpose."  Thus, defendants argue, the measure of just compensation here should be crafted to account for the unique circumstances of this taking.  The United States makes no attempt to distinguish *Miller*.  Instead, at oral argument, the United States merely argued that decision should be disregarded in favor of more recent decisions of the Supreme Court and our court of appeals.

The United States primarily rests its argument that the actual cost of a substitute facility must be the exclusive method of just compensation on the decision in *United States v. 50 Acres*, 469 U.S. 24, 30 (1984).  In that decision, the Supreme Court held that just compensation could not be measured by the actual cost of a substitute for a sanitary landfill property because "the testimony at trial established a fairly robust market for" such properties.  Where there was an ascertainable market value for the property condemned, just compensation for the taking of that property was required to be measured by that market value.  But that decision involved the condemnation of a single parcel of land, without regard to its effect on any adjacent property or any additional costs that needed to be expended apart from the construction of the substitute facility, so that decision is not analogous to our case.

The United States also cites *Washington v. United States ("Hanford")*, 214 F.2d 33, 39 (9th Cir. 1954), for the contention that when a substitute facility is necessary, just compensation is limited to the cost of that substitute facility.  There, the United States condemned a highway

6

1    that belonged to Washington, for which a substitute highway had to be constructed. That
2    decision found that the only issue relating to just compensation was "the amount necessary to
3    provide the necessary substitute," although Washington did not contend it was entitled to
4    compensation for any injury other than the loss of the facility. Thus, that decision is inapplicable
5    here for the same reason as *50 Acres*. Both decisions held that just compensation for the
6    condemnation of a public facility for which there is no market is the actual cost of constructing a
7    reasonably necessary substitute facility. Neither goes so far as to find that the cost of a substitute
8    facility must be the only measure of damages, even where other damages result beyond the loss
9    of a facility.

10   Our court of appeals has not addressed this question, though one district court in our
11   circuit has. In *United States v. 10.56 Acres*, No. 07-1261. 2008 WL 3977614, at *4 (W.D. Wash.
12   Aug. 22, 2008) (Judge Richard Jones), the United States condemned several rights of way for an
13   interstate, which had been owned by Washington. Washington sought compensation both for the
14   construction of a substitute facility and for the increased costs of operating and maintaining that
15   facility. The United States relied on *Hanford*, suggesting, as it does here, that decision provides
16   for two mutually exclusive methods of compensation (United States' Mot. at 17). Judge Jones
17   rejected that argument and found that "neither *Hanford* nor any other authority bars a court from
18   awarding 'just compensation' that combines a substitute facility with a monetary award." He
19   further determined "the court's duty [was] to fashion an award that permit[ted] the State to
20   'readjust its . . . highway system to serve [its] requirements and needs in as adequate a manner
21   and extent and with equal utility as such system would have provided had the facility in question
22   not been condemned, so far as this is reasonably practical." *Ibid.* (quoting *City of Fort Worth v.
23   United States*, 188 F.2d 217, 222 (5th Cir. 1951)). Accordingly, the condemnee was entitled to
24   compensation for costs incurred in excess of the cost of constructing a substitute facility.

25   This order finds the reasoning in *10.56 Acres* persuasive. As there, a jury could find that
26   our defendants have suffered harms to their property interests beyond what can be accounted for
27   by the construction of a substitute for McKay Avenue. Those harms mirror the two-pronged
28   recovery contemplated in *33.5 Acres*, 789 F.2d at 1398: (i) the loss of the facility of McKay

7

Avenue itself and (ii) the diminution in value of Crown Beach as a result of that condemnation. The actual cost of constructing a substitute facility compensates defendants for the former and as the United States argues, "entirely replaces the market value concept" for the valuation of the condemned facility. *United States v. Streets, Alleys and Public Ways in the Village of Stoutsville*, 531 F.2d 882, 884 n.7 (8th Cir. 1976). The United States has offered no authority — nor even a principle — demonstrating that the construction of a substitute facility *also* compensates for the harm to the remainder property.

Defendants are entitled to make a case to the jury for both categories of damages. To find otherwise would be to decide that an owner of a parking lot that services a public building suffers no additional harm above the harm an owner of a stand-alone parking lot of the same size and utility would suffer from the condemnation of that lot. Instead, it is appropriate to follow the direction of *Miller* and to craft a measure of damages appropriate for the circumstances of our case, rather than to consider a solitary formula for the calculation of just compensation.

Defendants have submitted an appraisal demonstrating they have suffered some severance damages beyond the loss of McKay Avenue as a facility. That appraisal includes damages such as the loss of control over the primary access point to Crown Beach and aesthetic damages that will result from the construction of a substitute facility. To the extent the United States argues any specific line-items in that appraisal are duplicative of compensation for a substitute facility, such objections are best considered on a motion *in limine*. To the extent the United States disputes the accuracy or substantiality of defendants' valuation methodology, that is an issue properly resolved in a *Daubert* motion or through cross-examination. Defendants have demonstrated that a jury trial is necessary to resolve the amount of just compensation due as a result of damages to the remainder property.

The United States also argues that severance damages are inappropriate here because such damages require that the severed parcels share a unity of ownership and use of the properties in question. It is true that a unity of ownership must exist among all parts of a larger parcel in order for severance damages to apply. *United States v. 57.09 Acres*, 706 F.2d 280, 281 (9th Cir. 1970). Although both parcels were held in fee by California, the United States argues

that McKay Avenue was subject to access easements held by others, which was not true of the remaining parcel at Crown Beach, so, it argues, ownership of the parcels cannot be said to be in unity. The decision in *57.09 Acres* did not establish so strict an understanding of unity, however. There, the defendant held a leasehold in the remainder parcel but held only an easement in the condemned tract. Nevertheless, the defendant was entitled to severance damages.

Similarly, in *United States v. 429.59 Acres*, 612 F.2d 459 (9th Cir. 1980), related but separate entities owned contiguous property and were each entitled to severance damages. The United States attempts to distinguish that decision arguing that the parcels there were "essentially all controlled by the same person," and that the touchstone for severance damages was that the property taken and the contiguous remainder must be "held by the same entities in the same manner." *Id.* at 464. That decision went on, however, to state "[e]ven if we disregard the joint ownership and management of the [defendants] and consider them as separate entities, severance damages would nevertheless be appropriate in this case. Each [defendant] owned fee interests in both land that was taken and land that is part of a contiguous remainder . . . ." *Ibid.* It does not go so far as to find that ownership in the "same manner" requires both parcels at issue to be completely unencumbered. Nor here. This order finds that a jury could find California's ownership of a fee interest in both parcels and East Bay's leasehold over both parcels are sufficient to find unity of ownership for the purposes of severance damages.

The United States also argues that McKay Avenue and Crown Beach do not share unity of *use*, because the former is a road while the latter is a park. This ignores the fact that defendants claim they operated the two parcels in unity in order to support public access to Crown Beach and the facilities there. A jury could find defendants' operation of those two parcels constitutes a unity of use for the purposes of finding severance damages.

Defendants have shown there is a triable issue of fact as to the extent of severance damages, and the United States has failed to demonstrate that defendants' theory of severance damages fails as a matter of law. Thus, the harm to the value of Crown Beach as a result of the taking of McKay Avenue must be determined by a jury.

9

**CONCLUSION**

For the reasons stated above, the motion for summary judgment of the United States is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 14, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE